UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACQUELINE S. HALLIBURTON | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| PHH MORTGAGE CORPORATION, | § | |
| NEWREZ MORTGAGE LLC, and THE | § | |
| BANK OF NEW YORK MELLON | § | CIVIL ACTION NO. 4:20-CV-00919 |
| TRUST COMPANY, NATIONAL | § | |
| ASSOCIATION AS TRUSTEE FOR | § | |
| RESIDENTIAL ASSET MORTGAGE | § | |
| PRODUCTS, INC., HOME EQUITY | § | |
| MORTGAGE ASSET-BACKED PASS- | § | |
| THROUGH CERTIFICATES, SERIES | § | |
| 2004-KR2 | § | |
| Defendants. | § | |

PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Jacqueline S. Halliburton, Plaintiff, filing this First Amended Complaint

against Ocwen Loan Servicing, LLC, PHH Mortgage Corporation, NewRez Mortgage LLC, and

The Bank of New York Mellon Trust Company, National Association fka The Bank of New York

Trust Company, N.A. as successor to JPMorgan Chase Bank, as Trustee for Residential Asset

Mortgage Products, Inc., Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series

2004-KR2, Defendants, pursuant to a stipulation between all parties that Plaintiff have until

December 31, 2020 to amend the pleadings, and for causes of action would respectfully show the

Court the following:

## I.      PRELIMINARY STATEMENT

1.  Jacqueline S. Halliburton, a 73-year old homeowner, brings this action for damages from

breach of contract and violations of the Texas Debt Collection Act (hereinafter "TDCA"), the Fair Debt Collection Practices Act (hereinafter "FDCPA"), the Real Estate Settlement Procedures Act (hereinafter "RESPA"), the Truth in Lending Act (hereinafter "TILA"), and the Fair Credit Reporting Act (hereinafter "FCRA").

2. All of the claims stated herein stem from the pattern of inaccurate and wrongful servicing methods and debt collection activities related to Ms. Halliburton's mortgage loan on her homestead.

## II.  JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §1331 for the federal questions, with supplemental jurisdiction for matters of state law under 28 U.S.C. §1367.

4. This Court also has jurisdiction over this action under 28 U.S.C. §1332 for diversity in parties.

5. Venue in this district is proper under 28 U.S.C. §1391(b)(2) in that Defendants transact business in this district, the conduct complained of occurred in this district, and the property that is the subject of this action is situated in this district.

## III.  PARTIES

6. Plaintiff, Jacqueline S. Halliburton, is an individual who resides at 1361 Country Place Drive, Houston, Harris County, Texas 77079. Plaintiff is the Borrower on a Purchase Money Mortgage Deed of Trust on which Defendants are attempting to foreclose so that they may sell her homestead.

7. Defendant Ocwen Loan Servicing, LLC (hereinafter "Ocwen") is a foreign limited liability company which does business in the State of Texas. Ocwen was the Servicer for BONY when the Notice of Default was sent to Plaintiff.

8. Defendant PHH Mortgage Corporation (hereinafter "PHH") is a foreign limited partnership which does business in the State of Texas. PHH is the current Servicer of the above-referenced Deed of Trust.

9. Defendant NewRez Mortgage LLC (hereinafter "NewRez") is a limited liability company which does business in the State of Texas. NewRez is the current Servicer c/o PHH.

10. Defendant The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Trustee for Residential Asset Mortgage Products, Inc., Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2004-KR2 (hereinafter "BONY") is a foreign entity doing business in Texas. BONY is the Mortgagee/Investor for the above-referenced Deed of Trust. BONY is vicariously liable for the actions of Ocwen, PHH, and NewRez in this matter.

## IV.    FACTUAL BACKGROUND

### A.  Ms. Halliburton entered in to a mortgage contract in 2004.

11. The property in question, hereinafter "the Property," is located at 1361 Country Place Dr., Houston, Texas 77079. The legal description of the Property is:

> LOT FOUR (4), IN BLOCK NINE (9), OF MEMORIAL CLUB TOWNHOUSES, SECTION ONE (1), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 174, PAGE 82 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

12. Plaintiff purchased the Property on or about June 3, 2004. In order to purchase the Property, she took out a mortgage with Southtrust Mortgage Corporation in the amount of

$116,700.00. *See attached Deed of Trust as Exhibit 1.* GMAC became the servicer of the Plaintiff's loan in August 2004. Plaintiff was notified of the change in the servicer, but not as to who owned her note. *See attached Affidavit of Jacqueline S. Halliburton as Exhibit 2.* Ocwen became the servicer for the lender in 2013 until 2019 when PHH took over. Plaintiff never received any documentation as to how NewRez became involved. *Id.* Plaintiff just started receiving mortgage statements with NewRez's name on them. *Id.*

13. Plaintiff is a 73-year-old woman whose only sources of income are Social Security Retirement and an amount she makes each month from part-time employment. *Id.* She has been paying this loan on her homestead for approximately sixteen years.

14. From June 2004 forward, Plaintiff Jacqueline S. Halliburton has lived in the Property and has claimed the Property as her homestead and Harris County Appraisal District has listed her as the owner of the property. *Id.*

## B. Ms. Halliburton continues to experience servicing issues and sues Ocwen in 2015; the case settles with a Loan Modification Agreement in 2016.

15. Plaintiff filed suit against Defendant Ocwen Loan Servicing, LLC in April 2015 alleging Breach of Contract, Negligence, Conversion, Declaratory Judgment, etc. due to incorrect accounting and misapplication of her payments by Ocwen. That case was removed to federal court by Ocwen Loan Servicing, LLC in June 2015 where the parties eventually settled those claims after mediation.

16. As part of the settlement, Plaintiff signed a Loan Modification Agreement with Ocwen on April 28, 2016 which included the Present Holder of the Note and Lien: BONY. *See attached Loan Modification Agreement as Exhibit 3.* The new principal and interest portion

of the Plaintiff's payment was $484.76 and the tax and insurance portion of payment was $15.35 for a total monthly payment of $500.11. *Id.*

17. Plaintiff has maintained homeowner's insurance with State Farm insurance since 2007. *See Exhibit 2*. State Farm has annually provided evidence of this policy to each of the servicers of the Plaintiff's loan, which the various servicer Defendants ignored and continued to ignore. *Id.* Plaintiff learned the $15.35 payment was supposed to be going into her escrow account which was the amount of the Spring Branch ISD property taxes for the year of 2016 divided by 12. *Id.* Plaintiff's school district taxes are lower due to her homestead's lower value and her multiple property tax exemptions that have been in place since 2011. *Id.*

### C. Ocwen force-placed an insurance policy on Ms. Halliburton's account after receiving proof of her own insurance policy.

18. After the settlement in 2016, Plaintiff set up an ACH deposit with Amegy Bank specifically to make mortgage payments to Defendants Ocwen and BONY. *Id.* During 2017, Plaintiff found that Defendant Ocwen had continued to make accounting errors on her loan account, added unnecessary fees, and conducted a pattern of deceptive, predatory behavior which included false reporting to credit reporting agencies. *Id.* The false reporting prevented Plaintiff from being able to refinance the mortgage on her homestead. *Id.* This led Plaintiff to close her Amegy Bank account and begin sending most, if not all, of her payments to Ocwen via check sent by certified mail, return receipt requested. *Id.*

19. In November 2017, Ocwen began receiving Plaintiff's mortgage payments via check, and began a practice of stamping them as received, and returning them to Plaintiff uncashed. *Id.*

**D. Defendants' purchase an unnecessary insurance policy, creating a default on Ms. Halliburton's account, starting a multi-year process of attempted unlawful foreclosures**

20. From November 2017 to March 2019, Plaintiff continued to send her mortgage payments to Ocwen via check. She sent checks for the past payments that had been returned and current payments. All checks were either stamped as received and returned to Plaintiff or went missing and were never returned, cashed, or applied to her mortgage loan account. *Id.* In April 2019, NewRez c/o PHH replaced Ocwen as servicer for Plaintiff's loan and began cashing Plaintiff's mortgage payments and placing them in a suspense account rather than applying the payments to her outstanding principal and accruing interest. *Id.*

21. Defendants scheduled foreclosure sales for July 2018, October 2018, and February 2019 in attempts to sell the Plaintiff's homestead. Defendants most recently had set the Plaintiff's homestead for the foreclosure sale scheduled for March 3, 2020. *See attached Notice of Substitute Trustee's Sale as Exhibit 4.* The three previous foreclosures were all based on a defective Notice of Default letter dated January 26, 2018. *See attached Notice of Default as Exhibit 5.* Plaintiff's prior counsel sent counsel for Ocwen correspondence relaying the issues with the default letter and the accounting errors prior to each of the scheduled foreclosure sales. *See Exhibit 2.* The attorney for Ocwen cancelled the sales after receiving these letters. *Id.* PHH and NewRez are new servicers to Plaintiff's loan, but appear to be attempting to foreclose and sell Plaintiff's homestead using this same defective January 2018 notice of default. This is the fourth illegally attempted foreclosure sought against Plaintiff, and the first time she has had to seek injunctive relief to protect her home.

22. The Notice of Default letter dated January 26, 2018 was sent by Ocwen. *See Exhibit 5.* The total amount alleged in default is not correct. *Id.* Ocwen created the default when it refused

to accept Plaintiff's timely submitted mortgage payments. Plaintiff sent checks for the amount of the principal and interest owed each month per the modification agreement she signed. *See Exhibit 2.* An additional escrow account for homeowner's insurance was not necessary to be collected by Ocwen since Plaintiff had proven to Defendants that she had her own insurance policy which she paid for each month. Additionally, Plaintiff provided Defendants with evidence that she kept her Spring Branch ISD property taxes paid annually. *Id.* Defendants were adding escrow charges of their own volition, creating a default where there was none, which is why they alleged they were not required to accept partial payments from the Plaintiff.

## V.    CAUSES OF ACTION

### Count 1—Breach of Contract

23. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

24. Plaintiff signed a mortgage contract in 2004 and a subsequent loan modification agreement in 2016.  *See attached Deed of Trust as Exhibit 1 and Loan Modification Agreement as Exhibit 3.* This agreement states that "the insurance carrier providing the insurance shall be chosen by you [Borrower] subject Ocwen's approval which shall not be unreasonably withheld."

25. The modification agreement also tacitly acknowledged Plaintiff's payments for her homeowner's insurance policy as it only set the escrow amount at $15.35 to pay for the Spring Branch ISD taxes for the year the agreement was signed.

26. Plaintiff has had State Farm insurance since 2007, however Defendants continued to add insurance amounts to the annual escrow accounting statements which served to double

charge Plaintiff for insurance. Defendants tacitly approved Plaintiff paying for her own insurance policy, yet continued to seek to collect the premium via the Plaintiff's escrow account.

27. Defendants breached the contract by overcharging Plaintiff and manufacturing late charges which proximately caused Plaintiff's alleged default amount to increase over time.

28. Ocwen breached the contract by failing to apply payments to interest and principal before escrow and fees and then failing to accept payments.

29. PHH and NewRez breached the contract by holding unapplied funds and not applying the funds to the principal balance or returning them to Plaintiff within a reasonable amount of time.

30. The loan modification agreement specifies that Defendants must institute foreclosure proceedings subject to applicable law. Here, Texas law requires sending a proper notice of default under Texas Property Code § 51.002(d). Defendants did not institute foreclosure proceedings subject to Texas law, as required by the contract. Specifically, Defendants did not send a proper notice of default under Texas law, as further discussed under Count 2, paragraphs 32-37.

31. The essential elements in a breach of contract claim are as follows: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach. Frost Nat'l Bank v. Burge, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

32. Plaintiff performed under the contract by tendering principal and interest payments to Defendants under the modification agreement. BONY is the holder of the note in question

and Ocwen, PHH, and NewRez acted as servicing agents on BONY's behalf in the servicing of this loan. Defendants' breached the modification agreement when they continued to add insurance amounts to the annual escrow accounting statements which served to double charge Plaintiff for insurance; overcharged Plaintiff and manufactured late charges; failed to apply payments to interest and principal before escrow and fees and then failed to accept payments; held unapplied funds and did not apply the funds to the principal balance or return them to Plaintiff within a reasonable amount of time; and did not institute foreclosure proceedings subject to Texas law.

33. . Defendants' material breaches of contract damaged Plaintiff as they lead to unnecessary fees, the inevitable default due to Defendants' actions, and the wrongful attempts at foreclosure of Plaintiff's home.

**Count 2—Violation of the Texas Property Code**

34. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

35. Texas Property Code § 51.002(d), states the following:

> "Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)."

36. Here, Ocwen is no longer the current mortgage servicer of the debt, therefore the notice of default letter sent to Plaintiff on January 26, 2018 is a deficient notice.

37. Assuming *arguendo* that the new loan servicers may rely upon the January 2018 notice sent by Ocwen, the notice itself fails to comply with the requirements of 51.002(d). The

notice of default sent by Ocwen incorrectly stated the alleged amount owed and is therefore deficient.

**Count 3—Violation of the Texas Debt Collection Act ("TDCA")**

38. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

39. The subject debt in this case qualifies as consumer debt under the TDCA since it is an obligation primarily for personal, family, or household purposes. Tex. Fin. Code § 392.001(2).

40. Ocwen, PHH, NewRez, and BONY are considered debt collectors under the TDCA. Tex. Fin. Code § 392.001(6).

41. The applicable TDCA provision violated by Defendants states: "a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: misrepresenting the character, extent, or amount of a consumer debt." Tex. Fin. Code § 392.304(a)(8).

42. The actions of Defendants Ocwen, PHH, NewRez, and BONY violated the TDCA when they misrepresented the character, extent, and amount of the debt alleged in the January 26, 2018 Notice of Default letter (*See attached Exhibit 4.*), as well as other correspondence to Plaintiff.

43. Defendants violated the TDCA by misrepresenting the character, extent, and amount of consumer debt to both Ms. Halliburton, as well as credit reporting agencies.

44. Pursuant to §392.403(b) of the Texas Finance Code, Plaintiff is requesting reasonable attorney's fees.

**Count 4—Violation of the Fair Debt Collection Practices Act ("FDCPA")**

45. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

46. Plaintiff is a "consumer" as defined by 15 U.S.C.A. § 1692a(3).

47. The subject debt and the unauthorized fees and costs qualify as a "debt" as defined by 15 U.S.C.A. § 1692a(5) as they are alleged obligations which arise out of a transaction for personal, family, or household purposes.

48. PHH and NewRez are "debt collectors" as defined by 15 U.S.C.A. § 1692a(6) because both entities regularly collect debts and use the mail and/or telephone to collect delinquent consumer accounts. PHH and NewRez are "debt collectors" under the FDCPA because the mortgage loan in question was in alleged default at the time PHH and NewRez began servicing the loan.

49. The FDCPA prohibits the use of "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C.A. § 1692d.

50. The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C.A. § 1692e.

51. The FDCPA further prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C.A. § 1692f.

52. Defendants violated 15 U.S.C.A. §§1692d, e(2), e(8), f and f(1) through their debt collection efforts.

*Violations of 1692d*

53. PHH and NewRez violated 15 U.S.C.A. § 1692d when they engaged in abusive and oppressive conduct within one year of the filing of the Complaint through (i) unethical mismanagement of the escrow account; (ii) refusal to correct their accounting errors after repeated disputes over the past 3 years; (iii) misrepresenting the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale four times; and (vi) reporting false information and reporting the loan delinquent to credit bureaus.

*Violations of 1692e*

54. PHH and NewRez violated 15 U.S.C.A. § 1692e(2) when they misrepresented the character, amount, or legal status of the subject debt by (i) misrepresenting the amounts owed for escrow; (ii) declaring the loan in delinquent or default status; and (iii) threatening four foreclosure sales.

55. PHH and NewRez violated 15 U.S.C.A. §1692e(8) by reporting false information to third parties when it reported Ms. Halliburton's loan as delinquent to the credit bureaus.

*Violations of 1692f*

56. PHH and NewRez violated 15 U.S.C.A. §1692f by employing unfair and unconscionable means to collect the subject debt by (i) misrepresenting the amounts owed for escrow, (ii) declaring the loan in delinquent or default status; (iii) threatening four foreclosure sales; and (iv) reporting false information and reporting the loan delinquent to credit bureaus.

57. PHH and NewRez violated 15 U.S.C.A. §1692f(1) by (i) misrepresenting the amounts owed for escrow; (ii) declaring the loan in delinquent or default status; (iii) threatening four

foreclosures sales; and (iv) reporting false information and reporting the loan delinquent to credit bureaus.

58. Pursuant to 15 U.S.C. §1692k, Plaintiff is requesting costs and reasonable attorney's fees.

**Count 5—Violation of Regulation X of the Real Estate Settlement Procedures Act of 1974 ("RESPA")**

59. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

60. The subject loan is a "federally related mortgage" under RESPA.

61. Ocwen, PHH, and NewRez each qualify as a "servicer" under 12 U.S.C.A. §2605(i)(2).

62. The force-placed insurance provision of RESPA states: "A servicer may not assess on a borrower a premium charge or fee related to force-placed insurance unless the servicer has a reasonable basis to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance." 12 CFR § 1024.37(b).

63. Defendants had no reasonable basis to believe Plaintiff had failed to comply with maintaining hazard insurance, therefore their annual escrow analysis was incorrect and their actions violate RESPA. Defendants implicitly approved Plaintiff paying for her own insurance policy, yet continued to assess on Plaintiff a premium charge or fee for insurance.

64. When Plaintiff only paid the contractual amount for her principal and interest, Defendants began improperly returning her checks due to alleged partial payment even though they were full payments. Defendants' failure to comply with RESPA's force place insurance regulations manufactured defaults on the Plaintiff's mortgage account that never existed.

65. Defendants also violated RESPA by (i) demanding escrow payments that significantly exceeded the actual amount required for insurance and taxes; (ii) demanding, assessing,

charging, and funding Plaintiff's escrow account with more than the 1/6th cushion allowed under RESPA; (iii) failing to refund an escrow surplus of over $50; and (iv) failing to correct the wrongful escrow increase, charge, or deductions for taxes and insurance in accordance with RESPA. 12 U.S.C.A. §2609(a).

66. Plaintiff requests that this Court award Plaintiff reasonable attorney's fees and costs pursuant to 12 U.S.C.A. §2605(f).

**Count 6—Violation of Regulation Z of the Truth in Lending Act ("TILA") of 1968**

67. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

68. One provision of TILA states the following:

"The creditor, assignee, or servicer with respect to any residential mortgage loan shall transmit to the obligor, for each billing cycle, a statement setting forth each of the following items, to the extent applicable, in a conspicuous and prominent manner: (A) The amount of the principal obligation under the mortgage; (B) The current interest rate in effect for the loan; (C) The date on which the interest rate may next reset or adjust; (D) The amount of any prepayment fee to be charged, if any; (E) A description of any late payment fees; (F) A telephone number and electronic mail address that may be used by the obligor to obtain information regarding the mortgage; (G) The names, addresses, telephone numbers, and Internet addresses of counseling agencies or programs reasonably available to the consumer that have been certified or approved and made publicly available by the Secretary of Housing and Urban Development or a State housing finance authority (as defined

in section 1441a–1 of title 12); and (H) Such other information as the Board [2] may prescribe in regulations." 15 U.S. Code § 1638(f)(1).

69. Defendants (creditors, assignees, and servicers under TILA) violated TILA by failing to send Plaintiff all required periodic statements since 2018. Periodic statements were sent intermittently until April 2020 when they stopped being sent to Plaintiff. Plaintiff has had no way of knowing how her payments were being applied, if at all, for several months.

70. Additionally, the Payment Processing provision under Servicing Practices of Regulation Z states:

> "No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency, or except as provided in paragraph (c)(1)(iii) of this section. A periodic payment, as used in this paragraph (c), is an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle. A payment qualifies as a periodic payment even if it does not include amounts required to cover late fees, other fees, or non-escrow payments a servicer has advanced on a consumer's behalf." 12 CFR § 1026.36(c)(1)(i).

71. Defendants again violated TILA by failing to credit periodic payments made by Plaintiff as of the date of receipt beginning in November 2017 continuing until present day. If Plaintiff's payments had been properly credited, she would not have been charged additional late fees and other related fees and the alleged default would not have occurred.

72. Plaintiff is entitled to actual damages under 15 U.S.C. § 1640 for these violations.

**Count 7—Violation of the Fair Credit Reporting Act ("FCRA")**

73. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

74. Furnishers of information to consumer reporting agencies have a duty to report accurate information. Servicers who report information to consumer reporting agencies are considered furnishers under the FCRA. Ocwen, PHH, and NewRez are all furnishers under the FCRA.

75. If a consumer believes inaccurate information has been reported to consumer reporting agencies, that consumer can send a letter disputing the errors. The FCRA specifically says:

"After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—(A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—(i) modify that

item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." 15 U.S. Code § 1681s–2(b).

76. Plaintiff has disputed the credit reporting regarding her mortgage loan since February 2018. She has sent letters to both the consumer reporting agencies and Defendants. Plaintiff completed an online dispute with Transunion on July 31, 2020 and never received a response. Plaintiff sent another detailed dispute letter via certified mail to Experian on or about November 21, 2020. Plaintiff included approximately 300 pages of evidence showing her payments were sent to Defendants timely and were wrongly reported as past due. Experian provided this dispute letter to the furnishers which responded by sending a report back to Experian.

77. Experian responded to Plaintiff's dispute letter on December 15, 2020 with the following language: "We have contacted the company reporting the information you disputed." In this Experian report, it shows a before/after view of Plaintiff's Ocwen and PHH Loan account's recorded history. *See attached Dispute Report as Exhibit 7.* Ocwen continues to allege Plaintiff was 30 and 60 days past due between May and July 2017 even though Plaintiff provided evidence of timely payments. Ocwen also did not make changes for payments made 2018 and after. PHH did not make any changes regarding the disputes.

78. Under the FCRA, the recent dispute report provided to Plaintiff shows the Defendants failed to conduct a reasonable investigation and review all provided information in order to provide an accurate report of Plaintiff's payments to the consumer reporting agencies. Additionally, the report provided does not actually detail what investigation, if any, was done.

79. Plaintiff's credit score has been destroyed by Ocwen and PHH's negative, inaccurate, and misleading credit reporting. Plaintiff has had several credit applications denied due to the damage inflicted by Defendants to her credit report. Plaintiff has suffered emotional damages due to having to repeatedly dispute Defendant's credit reporting and every denial of credit has been harmful to Plaintiff's reputation.

80. Plaintiff is entitled to actual damages, attorney's fees, and costs under 15 U.S. Code § 1681o for a furnisher's negligent failure to comply with the above listed FCRA provision. And if the violation is willful, the furnisher is liable for actual damages or minimum statutory damages between $100 and $1000, for punitive damages, as well as for costs and attorney fees. 15 U.S. Code § 1681n.

81. At the minimum, Defendants' actions as furnishers were negligent in this case. Since Defendants knew there was a dispute in February 2018 from Plaintiff and were provided evidence in a second dispute and did not correct the inaccurate information, their actions of failing to reasonably reinvestigate Plaintiff's allegations were willful and therefore subject to punitive damages.

**Count 8—Declaratory Judgment**

82. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

83. Plaintiff seeks a declaration that Defendants have materially breached the mortgage contract.

84. Plaintiff seeks a declaration that the Defendants have violated the TDCA by misrepresenting the character, extent, or amount of debt to both Plaintiff and credit bureaus.

85. Plaintiff seeks a declaration that Defendants have violated the FDCPA by repeatedly misrepresenting the amounts owed for escrow; (ii) declaring the loan in delinquent or default status; (iii) scheduling and noticing four foreclosures sales; and (iv) reporting false information and reporting the loan delinquent to credit bureaus.

86. Plaintiff seeks a declaration that the Defendants incorrectly forced insurance premiums on Plaintiff which proximately caused incorrect fees to accrue.

87. Plaintiff seeks a declaration that the Defendants failed to send required periodic statements to Plaintiff each billing period.

88. Plaintiff seeks a declaration that Defendants wrongly returned payments to Plaintiff instead of crediting these payments her mortgage loan account.

89. Plaintiff further seeks a declaration that Defendants failed to reasonably reinvestigate Plaintiff's credit disputes and did not review all relevant provided information, therefore violating the FCRA.

90. Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, Plaintiff requests reasonable and necessary attorney's fees.

**PRAYER**

I.     Plaintiff respectfully requests that the Defendants be cited to appear and answer and that, on final hearing, the Plaintiff have judgment as follows:

    1.    Declaration that Defendants have materially breached the mortgage contract;

    2.    Declaration that the Defendants have violated the TDCA by misrepresenting the character, extent, or amount of debt to both Plaintiff and credit bureaus;

3.      Declaration that Defendants have violated the FDCPA by repeatedly misrepresenting the amounts owed for escrow; (ii) declaring the loan in delinquent or default status; (iii) threatening four foreclosures sales; and (iv) reporting false information and reporting the loan delinquent to credit bureaus;

4.      Declaration that the Defendants incorrectly forced insurance premiums on Plaintiff which proximately caused incorrect fees to accrue;

5.      Declaration that the Defendants failed to send required periodic statements to Plaintiff each billing period;

6.      Declaration that Defendants wrongly returned payments to Plaintiff instead of crediting her account;

7.      Declaration that Defendants failed to reasonably reinvestigate Plaintiff's credit disputes and did not review all relevant provided information, therefore violating the FCRA;

8.      Order Defendants to delete all adverse credit reporting related to the loan and report corrections to payment history showing payments as current since the loan modification in 2016;

9.      Damages against Defendants for their breach of the modification agreement;

10.     Actual, compensatory, punitive, and statutory damages against Defendants for their violations of the TDCA, FDCPA, RESPA, TILA, and the FCRA, where available and applicable;

11.     Pre and post judgment interest;

12.     Costs and reasonable and necessary attorney's fees; and

13.     Such other and further relief to which Plaintiff may be justly entitled.

**Plaintiff demands trial by jury.**

Respectfully submitted,

Lone Star Legal Aid

/s/ Rachel Sechelski
Rachel Sechelski
Attorney-in-Charge
State Bar No: 24096053
S.D. Tex. Bar No: 3471424
rsechelski@lonestarlegal.org
Amir Befroui
State Bar No: 24073547
S.D. Tex. Bar No: 1692397
abefroui@lonestarlegal.org

500 Jefferson, 17th Floor
Houston, TX 77002
Telephone: (713) 652-0077 Ext. 1056
Fax: (713) 652-0044

ATTORNEYS FOR PLAINTIFF

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 29, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I hereby certify that I have served the foregoing on all counsel of record as follows:

*Via ECF and/or CMRRR*
Matthew A. Knox
McGlinchey Stafford, PLLC
1001 McKinney, Suite 1500
Houston, Texas 77002
mknox@mcglinchey.com
&

Emily Stroope
McGlinchey Stafford, PLLC
6688 North Central Expressway, Suite 400
Dallas, Texas 75206
estroope@mcglinchey.com
ATTORNEYS FOR DEFENDANTS

<u>/s/ Rachel Sechelski</u>
Rachel Sechelski