**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JACQUELINE S. HALLIBURTON** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **OCWEN LOAN SERVICING, LLC,** | § | |
| **PHH MORTGAGE CORPORATION,** | § | |
| **NEWREZ MORTGAGE LLC, and THE** | § | |
| **BANK OF NEW YORK MELLON** | § | **CIVIL ACTION NO. 4:20-CV-00919** |
| **TRUST COMPANY, NATIONAL** | § | |
| **ASSOCIATION AS TRUSTEE FOR** | § | |
| **RESIDENTIAL ASSET MORTGAGE** | § | |
| **PRODUCTS, INC., HOME EQUITY** | § | |
| **MORTGAGE ASSET-BACKED PASS-** | § | |
| **THROUGH CERTIFICATES, SERIES** | § | |
| **2004-KR2** | § | |
| **Defendants.** | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants PHH Mortgage Corporation, on its own behalf and as successor-by-merger to

Ocwen Loan Servicing, LLC ("**PHH**"), NewRez Mortgage, LLC ("**NewRez**"), and The Bank of New

York Mellon Trust Company, National Association as Trustee for Residential Asset Mortgage

Products, Inc., Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2004-KR2

("**BONY Mellon**") (collectively, "**Defendants**") file this Motion for Summary Judgment seeking

final summary judgment on all claims alleged by Plaintiff in her Second Amended Complaint.

Summary judgment is proper because Plaintiff agreed in writing that her monthly escrow payment

was subject to periodic adjustment.  Accordingly, Defendants were allowed to adjust the monthly

escrow payment to account for property insurance and there is no fact issue to be determined at

trial.

1

16789381.1

## I.   SUMMARY OF MOTION

1.      The central issue in this suit is whether Defendants were allowed to escrow for taxes and insurance after the mortgage loan was modified in 2016.  Plaintiff alleges that it was improper for Defendants to escrow for property insurance, and asserts claims for breach of contract, violation of the Texas Debt Collection Act, violation of the Fair Debt Collection Practices Act, violation of the Truth in Lending Act, and violation of the Fair Credit Reporting Act, seeking injunctive relief preventing Defendants from foreclosing on the real property at issue.  The Deed of Trust and Modification Agreement allow Defendants to adjust the monthly escrow payment. Moreover, Defendants informed Plaintiff that their policy was to escrow for taxes and insurance for at least twelve months after a loan modification. Nonetheless, Plaintiff refused to pay the escrow amounts and as a result her loan fell into default.  In her deposition Plaintiff admitted this was a "misunderstanding" on her part.[1]  Because the loan documents state that the monthly escrow account is subject to periodic adjustment, summary judgment is warranted on all of Plaintiff's claims.

## II.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A.     The Origination of the Loan

2.      Plaintiff signed an Adjustable Rate Note dated June 3, 2004 in the amount of $116,700.00 (the "*Note*") originally payable to SouthTrust Mortgage Corporation ("*SouthTrust*").[2]  Plaintiff also signed a Deed of Trust dated June 3, 2004 (the "*Deed of Trust*") which secured the Note and encumbered the real property commonly known as 1361 Country

---

[1] *See* Deposition of Plaintiff, p. 129, ln. 12 - p. 130, ln. 14.
[2] *See* Business Records Affidavit, **Exhibit A**; *see also* Note, **Exhibit A-1**.

Place Drive, Houston, Texas 77079 (the "***Property***").[3]  SouthTrust later assigned the Note and Deed of Trust to BONY Mellon.[4]

3.       The Deed of Trust states, in relevant part, that "Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current."[5] The Deed of Trust also states that "Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (c) premiums for any and all insurance required by Lender under Section 5 . . . ."[6]  The Deed of Trust further provides that the lender may waive the borrower's obligations to pay for escrow items, but "[a]ny such waiver may only be in writing."[7]

**B.       The First Lawsuit & Modification Agreement**

4.       Plaintiff first filed suit against Ocwen on April 24, 2015 in the 270th Judicial District Court of Harris County, Texas under Cause No. 2015-23592, styled as *Jacqueline S. Halliburton v. Ocwen Loan Servicing, LLC* (the "***First Lawsuit***"). Ocwen removed the suit to federal court on June 3, 2015.[8]

5.       As part of the settlement of the First Lawsuit, Plaintiff was offered a modification of the Loan which resulted in a formal Modification Agreement signed by Plaintiff and Ocwen.[9] The Modification Agreement required Plaintiff to make principal and interest payments of $484.76 and payments of $15.35 for taxes and insurance on the first of the month every month beginning May 1, 2016.[10]  The Modification Agreement also provided, in relevant part, that "[t]he escrow

---

[3] *See* Business Records Affidavit, **Exhibit A**; *see also* Deed of Trust, **Exhibit A-2**.
[4] *See* Business Records Affidavit, **Exhibit A**; *see also* Assignment, **Exhibit A-3**; *see also* Note with endorsement, **Exhibit A-1**.
[5] *Id.*, at ¶1, pg. 3.
[6] *Id.*, ¶3, pg. 3.
[7] *Id.*, ¶3, pg. 4.
[8] *See* docket from the First Lawsuit, **Exhibit C**.
[9] *See* Business Records Affidavit, **Exhibit A**; *see also* Modification Agreement, **Exhibit A-4**.
[10] *Id.*, ¶3(e), pg. 3.

3

payment may be adjusted periodically . . . and therefore the total monthly payment may change accordingly."[11]

6.      The Modification Agreement also states that Ocwen "is permitted to impose an escrow account upon the subject loan. **Ocwen may at any time collect and hold funds in the escrow account** in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrowers' escrow account under [RESPA]."[12]  The Modification Agreement states that the terms and conditions of the Note and Deed of Trust "remain in full force and effect."[13]

7.      The parties filed an Agreed Motion to Dismiss with Prejudice on May 25, 2016, which resulted in an Order granting the motion to dismiss being entered on May 27, 2016.[14]

**C.      June 2016 Escrow Statement**

8.      A month after the First Lawsuit was dismissed, on June 20, 2016, Ocwen sent an Annual Escrow Account Disclosure Statement to Plaintiff (the "*June 2016 Escrow Statement*").[15] The statement informed Plaintiff that, beginning August 2016, her monthly escrow payment would increase to $245.18.[16]

9.      On July 11, 2016, Plaintiff faxed a document to Ocwen's escrow department requesting that the escrow requirement for her loan be waived (the "*July 2016 Escrow Waiver Request*").[17]  In her deposition, Plaintiff testified that the handwriting on the request was hers and that she prepared the document.[18]  Plaintiff's request also included a notice from Ocwen with

---

[11] *See* Business Records Affidavit, **Exhibit A**; *see also* Modification Agreement, **Exhibit A-4**, ¶3(e), p. 3.
[12] *Id.*, ¶5, p. 3 (emphasis added).
[13] *Id.*, ¶1, p. 2.
[14] *See* Exhibit B.
[15] *See* Business Records Affidavit, **Exhibit A**; *see also* June 2016 Escrow, **Exhibit A-5**.
[16] *Id.*, p. 2.
[17] *See* Business Records Affidavit, **Exhibit A**; *see also* June 2016 Escrow, **Exhibit A-6.**
[18] *See* Deposition of Plaintiff, p. 40, ln. 6-11.

4

Plaintiff's handwriting on it.  The notice from Ocwen included information on the circumstances and criteria in determining whether Ocwen would waive escrow for taxes and insurance. Specifically, the notice informed Plaintiff that the escrow account could not be waived if the loan had not been current in the past twelve months or if the loan was modified within the past twelve months.  On this notice, Plaintiff wrote, in relevant part, "07-08-16 *This is a non-escrow account. Re: Loan # 7438125122.  I pay the taxes and insurance."[19]

10.     Ocwen reviewed Plaintiff's request to waive the escrow account for her loan.[20] While Ocwen reviewed her request, for the months of August through December 2016, her monthly mortgage statements continued to request payment in the amount of $500.11—the monthly payment amount stated in the Modification Agreement.[21]  Ocwen put the escrow increase on hold while it reviewed Plaintiff's request to waive escrow.[22]

11.     During her deposition, when it was pointed out to Plaintiff that Ocwen clearly informed her as early as July 8, 2016 that its policy was to not waive escrow when a loan had been modified in the preceding year, Plaintiff said, "Okay. A misunderstanding on my part, obviously."[23]

**D.     December 2016 Escrow Statement**

12.     On December 1, 2016, Ocwen sent another Annual Escrow Account Disclosure Statement to Plaintiff (the "***December 2016 Escrow Statement***").[24]  The statement indicated that beginning in February 2017, Plaintiff's projected escrow payment would increase to $211.59.[25]

---

[19] *See* Business Records Affidavit, **Exhibit A**; *see also* June 2016 Escrow, **Exhibit A-6.**
[20] *See* Business Records Affidavit, Exhibit A, ¶__.
[21] *See* Business Records Affidavit, **Exhibit A**; *see also* monthly mortgage statements for June 2016 through March 2020, **Exhibit A-7**.
[22] *See* Business Records Affidavit, Exhibit A, ¶__.
[23] *See* Deposition of Plaintiff, p. 129, ln. 12 - p. 130, ln. 14.
[24] *See* Business Records Affidavit, **Exhibit A**; *see also* December 2016 Escrow Statement, **Exhibit A-8**.
[25] *Id.*, at pg. 3.

5

13.     Accordingly, on January 6, 2017, Ocwen sent Plaintiff a monthly mortgage statement indicating the total monthly payment due on February 1, 2017, was $696.35.  This amount consisted of the amount set forth in the Modification Agreement for principal and interest ($484.76) plus the projected escrow amount of $211.59 ($484.76 + $211.59 = $696.35).

14.     As indicated by the loan payment history, Plaintiff paid $696.35 on February 5, 2017.[26]  Plaintiff had previously authorized Ocwen to make automatic withdrawals from her account by ACH on the fifth of each month.[27]  The ACH authorization specifically stated that the amount of monthly debits could change due to the terms of the account.[28]  Plaintiff testified during her deposition that the $696.35 was paid by her bank as part of her overdraft protection.[29]

**E.     Escrow Waiver Denial**

15.     On February 8, 2017, Ocwen sent Plaintiff a notice informing her that her request for an escrow waiver was denied for several reasons, one of which was that the loan had been modified less than a year prior and modified loans were required to be escrowed for both taxes and insurance for one year from the date of modification (the "***Escrow Waiver Denial***").[30]

**F.     Plaintiff's Default on the Loan**

16.     On February 7, 2017, Ocwen sent a monthly mortgage statement to Plaintiff which indicated the amount due on March 1, 2017 was $696.35.[31]  Plaintiff testified that she sent a cashier's check in the amount of $500.11 to Ocwen on February 24, 2017.[32]  The loan payment history shows the payment of $500.11 was processed on March 1, 2017.[33]  The payment of $500.11

---

[26] *See* Business Records Affidavit, **Exhibit A**; *see also* Loan Payment History, **Exhibit A-9**.
[27] *See* Business Records Affidavit, **Exhibit A**; *see also* ACH Authorization dated June 20, 2016, **Exhibit A-10**.
[28] *Id.*
[29] *See* Deposition of Plaintiff, pg. 71, ln. 15-16.
[30] *See* Business Records Affidavit, **Exhibit A**; *see also* Escrow Waiver Denial, **Exhibit A-11**.
[31] *See* **Exhibit A-7**.
[32] *See* Deposition of Plaintiff, pg. 72, ln. 6-12.
[33] *See* **Exhibit A-**9.

was held in suspense because it constituted a partial payment of the amount due ($696.35).[34]  Then, on the fifth of the month, the remaining amount of $196.24 was automatically withdrawn from Plaintiff's account pursuant to her ACH authorization.[35]  However, Plaintiff's account had been closed, which resulted in the reversal of the $196.24 payment.[36]

17.     On March 7, 2017, Ocwen sent a monthly mortgage statement to Plaintiff indicating the monthly amount due for April 1, 2017 was $705.25.[37]  Plaintiff sent two checks dated April 1, 2017 to Ocwen, one in the amount of $484.76 (Check No. 0101) and one in the amount of $25.34 (Check No. 0102).[38]  The Loan Payment History indicates the checks were processed on April 5, 2017.[39]  Plaintiff's payments totaled $510.10, significantly less than the $705.25 amount due for April 1, 2021.

18.     On April 7, 2017, Ocwen sent a monthly mortgage statement to Plaintiff indicating the monthly amount due for May 1, 2017 was $1,151.98.[40]  Again, Plaintiff sent two checks to Ocwen, one in the amount of $484.76 (Check No. 0103) and the other in the amount of $25.43 (Check No. 0104).[41]  Plaintiff's payments totaled $510.10, significantly less than the $1,151.98 amount due for May 1, 2021.

19.     On May 19, 2017, Ocwen sent to Plaintiff a monthly mortgage statement indicating the monthly amount due for June 1, 2017 was $1,345.87.[42]  Again, Plaintiff sent two checks to Ocwen, one in the amount of $484.76 (Check No. 1001) and the other in the amount of $25.43

---

[34] *See* Business Records Affidavit, **Exhibit A**.
[35] *Id.*
[36] *See* Deposition of Plaintiff, pg. 117, ln. 15 - pg. 118, ln. 8.
[37] *See* **Exhibit A-7**.
[38] *See* April 1, 2017 Checks, attached and incorporated hereto as **Exhibit 12**. During her deposition, Plaintiff testified that the taxes increased from $15.35 to $25.34 per month. *See* Deposition of Plaintiff, pg. 89, ln. 18 – pg. 90, ln. 2.
[39] *See* **Exhibit A-9**.
[40] *See* **Exhibit A-7.**
[41] *See* Business Records Affidavit, **Exhibit A**; *see also* May 1, 2017 Checks, **Exhibit 13**.
[42] *See* **Exhibit A-7**.

7

(Check No. 1002).[43]  Plaintiff's payments totaled $510.10, significantly less than the $1,345.87 amount due for June 1, 2017.

20.     For the duration of 2017, Ocwen sent monthly mortgage statements to Plaintiff indicating the amount due for the next month.[44]  As indicated by the Loan Payment History, Plaintiff did not pay the amounts owed.[45]  Consequently, the amount due every month grew until, on December 18, 2017, the amount due for the January 1, 2018 payment was $3,896.18.[46]

21.     On January 26, 2018, Ocwen sent a notice of default to Plaintiff (the "***Notice of Default***") which indicated the total amount past due was $3,934.92.[47]  To-date, Plaintiff has not cured the default and the account remains due and owing for the August 1, 2017 payment.[48]

## G.     Owner Merger with PHH

22.     Effective June 1, 2019, Ocwen merged with and into PHH.[49]  NewRez is an agent and subservicer for PHH.[50]

## H.     The Current Lawsuit

23.     On March 2, 2020, Plaintiff filed her Original Petition and Request for Temporary Restraining Order and Request for Temporary Injunction in this suit.  Defendants removed the case to this Court on March 12, 2020.[51]  Plaintiff filed her Second Amended Complaint—her live pleading—on April  30, 2021.[52]

---

[43] *See* Business Records Affidavit, **Exhibit A**; *see also* June 1, 2017 Checks, **Exhibit 14**.
[44] *See* **Exhibit A-7**.
[45] *See* **Exhibit A-9**.
[46] *See* **Exhibit A-7**.
[47] *See* Business Records Affidavit, **Exhibit A**; *see also* Notice of Default, **Exhibit A-15**.
[48] *See* Business Records Affidavit, **Exhibit A**.
[49] *Id.*
[50] *Id.*
[51] Doc. No. 1.
[52] Doc. No. 21.

### III.   SUMMARY JUDGMENT EVIDENCE & STANDARDS

**A.**   **Summary judgment evidence**

24.   In support of this motion, Defendants rely upon and incorporate herein by reference the following evidence:

**Exhibit A**   Declaration of Benjamin Verdooren in Support of Motion for Summary Judgment

    **Exhibit A-1**   Note

    **Exhibit A-2**   Deed of Trust

    **Exhibit A-3**   Transfer of Lien

    **Exhibit A-4**   Modification Agreement

    **Exhibit A-5**   June 2016 Escrow Statement

    **Exhibit A-6**   July 2016 Escrow Waiver Request

    **Exhibit A-7**   Monthly Mortgage Statements, June 2016 – March 2020

    **Exhibit A-8**   December 2016 Escrow Statement

    **Exhibit A-9**   Loan Payment History

    **Exhibit A-10**   ACH Authorization dated June 20, 2016

    **Exhibit A-11**   Escrow Waiver Denial dated February 8, 2017

    **Exhibit A-12**   Checks from Plaintiff dated April 1, 2017

    **Exhibit A-13**   Checks from Plaintiff dated May 1, 2017

    **Exhibit A-14**   Checks from Plaintiff dated June 1, 2017

    **Exhibit A-15**   Notice of Default

**Exhibit B**   Deposition of Plaintiff Jacqueline S. Halliburton

**Exhibit C**   Docket from First Lawsuit, Cause No. 4:15-cv-1491

16789381.1

### B. Summary judgment standard

25.     FEDERAL RULE OF CIVIL PROCEDURE 56 permits any party to a civil action to move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law.[53]

26.     A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.[54]  The movant need only show the absence of evidence to support a claim on issues to which the non-movant bears the ultimate burden of proof at trial.[55]  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.[56]  The non-moving party must set forth specific facts showing the existence of a genuine issue for trial.[57]

## IV.     ARGUMENTS & AUTHORITIES

**A.     Plaintiff's breach of contract claim fails as a matter of law because (1) Plaintiff materially breached the Note, Deed of Trust, and Modification Agreement by failing to make the required monthly payments and (2) Defendants did not breach any contract with Plaintiff.**

27.     In Texas, the essential elements of a breach of contract action are: 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of contract by the defendant; and 4) damages sustained by the plaintiff as a result of the breach.[58]  The plaintiff must identify which provision of the contract was breached or the claim may be dismissed for

---

[53] *See* FED. R. CIV. P. 56.
[54] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[55] *Id.* at 323-24.
[56] *Id.* at 324-25.
[57] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).
[58] *See Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

failing to contain sufficient factual allegations.[59]  It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance.[60]

28.     In her Second Amended Complaint, Plaintiff claims that Defendants breached the Modification Agreement "when they continued to add insurance amounts to the escrow billing which served to double-charge Plaintiff for insurance."[61]  Plaintiff alleges that, because she maintained insurance on the Property separately and directly with her insurer, it was unnecessary for Defendants to escrow for insurance.[62]

29.     Plaintiff's own material breach precludes her breach of contract claim.[63]  Plaintiff's allegation that she "performed under the contract" is conclusively disproven by the summary judgment evidence, including the Deed of Trust, the Modification Agreement, the monthly mortgage statements, and the loan payment history.  The summary judgment evidence establishes that, on the contrary, Plaintiff was required to make monthly payments including escrow and she failed to do so.  Plaintiff breached the Note, Deed of Trust, and Modification Agreement by failing to make full monthly payments including escrow beginning on March 1, 2017.[64]  Plaintiff remains in default on the Loan.[65]  Because Plaintiff breached the Note, Deed of Trust, and Modification

---

[59] *See Fannie Mae v. United States Prop. Solutions, LLC*, No. H-08-3588, 2009 U.S. Dist. LEXIS 36126 at *6, 2009 WL 1172711 (S.D. Tex. Apr. 28, 2009) (breach of contract claim dismissed where property owner failed to assert which provision of the loan was allegedly breached).

[60] *See Smith v. Nat'l City Mortg.*, No. A09-CV-881, 2010 WL 3338537, 2010 U.S. Dist. LEXIS 86221 at *34 (W.D. Tex., Aug. 23, 2010) *quoting Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004).

[61] *See* Second Amended Complaint, ¶29.

[62] *Id.*, at ¶¶20-22, 27.

[63] *See Sandoval v. Wilmington Sav. Fund. Soc'y*, No. 7:18-cv-91, 2018 U.S. Dist. LEXIS 223228 *8, 2018 WL 7253972 (S.D. Tex., Dec. 10, 2018) ("[D]efault on a promissory note is unquestionably a material breach.").

[64] *See* Business Records Affidavit, **Exhibit A**, ¶13.

[65] *See* Business Records Affidavit, **Exhibit A**.

Agreement by failing to make full monthly payments including escrow, her claim for breach of contract against Defendants fails.

30.     Plaintiff's claim for breach of contract also fails because Defendants never breached any contract with Plaintiff.  In both the Deed of Trust and the Modification Agreement, Plaintiff explicitly agreed to pay amounts for escrow.[66]  The Deed of Trust specifically states that "Borrower shall pay to Lender" the funds necessary for escrow items.[67]  The Modification Agreement says "Ocwen may at any time collect and hold funds" for escrow items.[68]  Accordingly, Defendants were allowed to adjust the monthly escrow payment by the terms of the Deed of Trust and Modification Agreement and there was no breach.

31.     Further, Plaintiff failed to identify any specific provision of the Note, Deed of Trust, or Modification Agreement that Defendants purportedly breached. Because Plaintiff fails to identify any specific provision of the contracts at issue that Defendants purportedly breached or how Defendants breached such provisions, her breach of contract claim fails as a matter of law.[69]

32.     Plaintiff's argument that the Modification Agreement "only set the escrow amount at $15.35 to pay for the Spring Branch ISD taxes for the year the agreement was signed" is explicitly and conclusively disproven by the very next sentence in the Modification Agreement that "[t]he escrow payment may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly."[70]

---

[66] *See* Business Records Affidavit, **Exhibit A**, *see also* Deed of Trust, **Exhibit A-2**, ¶3, pg. 3-4, *see also* Modification Agreement, **Exhibit A-4**, ¶3(e) and ¶5, pg. 3-4.

[67] *See* Business Records Affidavit, **Exhibit A**; *see also* Deed of Trust, **Exhibit A-2**, ¶3, pg. 3-4.

[68] *See* Business Records Affidavit, **Exhibit A**; *see also See* Modification Agreement, **Exhibit A-4**, ¶5, pg. 3.

[69] *See Davidson v. JPMorgan Chase, N.A.*, No. 4:13-CV-3698, 2014 U.S. Dist. LEXIS 138000 *37-38, 2014 WL 4924128 (S.D. Tex., Sept. 29, 2014) ("This Court also finds that Davidson's failure to identify specific contract provisions that she claims were breached by Chase and to allege how those terms were violated further evidence this deficiency in Davidson's breach of contract claim.").

[70] *See* Business Records Affidavit, **Exhibit A**; *see also* Modification Agreement, **Exhibit A-4**, ¶3(e), pg. 3.

16789381.1

33.     Plaintiff also alleges "[a] partial escrow waiver was effectively instituted without charging for insurance premiums from April 28, 2016 until February 2017."[71]  This is not the case. Plaintiff had submitted a request for an escrow waiver in July 2016 and, in February 2017, Ocwen informed her the request was denied because, *inter alia*, the loan had been modified within the last year.[72]  That is, Ocwen suspended the escrow increase while it considered her request to waive escrow.  Plaintiff's breach of contract law fails for all of these reasons and summary judgment is warranted on this claim.

**B.     Plaintiff's TDCA claims fail because Plaintiff fails to specify any purported misrepresentations of the character, extent, or amount of the debt and, in any event, the Notice of Default correctly stated that Plaintiff had defaulted on the Loan.**

34.     The Texas Debt Collection Act (the "***TDCA***") prohibits a debt collector from threatening to take an action prohibited by law, from misrepresenting the character, extent, or amount of a consumer debt, and from using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.[73]  The TDCA specifically provides that a debt collector is not prevented from exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings.[74]  The section of the TDCA relied on by Plaintiff in her Second Amended Complaint, §392.304(a)(8), prohibits misrepresentations of the character, extent, or amount of a consumer debt.[75] "To violate the TDCA using a misrepresentation, the debt collector must have made an *affirmative statement* that was false or misleading."[76]

---

[71] *See* Second Amended Complaint, ¶26.
[72] *See* Business Records Affidavit, **Exhibit A**; *see also* Escrow Waiver Denial, **Exhibit A-11**.
[73] *See Jones v. Wells Fargo Bank, N.A.*, No. 5-14-CR-943, 2015 U.S. Dist. LEXIS 188737 at *7, 2015 WL 12734177 (W.D. Tex., Jan. 21, 2015) (granting motion to dismiss).
[74] *See* Tex. Fin. Code §392.301(b)(3).
[75] *See* Tex. Fin. Code §392.304(a)(8).
[76] *See Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015) (citations omitted) (orig. emphasis).

35.     The sole basis Plaintiff asserts for her TDCA claim is Defendants' purported misrepresentations concerning "the character, extent, and amount of the debt alleged in the January 26, 2018 notice of default letter, as well as other correspondence to Plaintiff."[77]  Plaintiff does not identify how the Notice of Default (or any other correspondence from Defendants) or any of the amounts listed therein are incorrect and for this reason alone, the claim fails as a matter of law.[78]

36.     Further, the summary judgment evidence conclusively shows that Plaintiff defaulted on the Loan in 2017 by failing to make full monthly payments including escrow.[79] Thus the Notice of Default correctly stated that the Loan was in default and stated the amount required to cure the default.[80]  Defendants did not misrepresent the character, extent, and amount of the debt and summary judgment is warranted on this claim.

**C.     Plaintiff's FDCPA claim fails as a matter of law because Defendants are not debt collectors under the FDCPA, foreclosure-related activities are not debt collection under the FDCPA, and Defendants did not misrepresent the amount of the debt or that the Loan was in default.**

37.     The purpose of the FDCPA is to protect both debtors and non-debtors from misleading and abusive debt-collection practices.[81] Under 15 USC §1692e, debt collectors are prohibited from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.[82]  Here, Plaintiff broadly alleged that PHH and NewRez violated the FDCPA by "(i) misrepresenting the amounts owed; (ii) declaring the loan in delinquent or default status; and (iii) threatening a foreclosure sale that was uncalled for."[83]

---

[77] Plain. Second Amended Complaint, ¶34.
[78] *See Bitterroot Holdings, LLC v. Bank of N.Y. Mellon*, No. 14-cv-804 (RCL), 2017 U.S. Dist. LEXIS 222644 *45 (W.D. Tex., Aug. 3, 2017) (TDCA claim under §392.304(a)(8) dismissed because plaintiff's conclusory allegations failed to "identify any specific amount demanded by BONY or why that amount is incorrect.").
[79] *See* Business Records Affidavit, **Exhibit A**; *see also* Loan Payment History, **Exhibit A-9**.
[80]  *See id*; *see also* Notice of Default, **Exhibit A-15**.
[81] *See Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).
[82] *See Bitterroot Holdings, LLC*, U.S. Dist. 222644 at *43, quoting 15 USC §1692e.
[83] Plain. Second Amended Complaint, p. 8.

14

38.     The Fifth Circuit has noted that the definition of "debt collector" under the FDCPA specifically excludes a mortgage servicing company, or an assignee of a debt as long as the debt was not in default at the time it was obtained.[84]  Here, Plaintiff only alleged that PHH and NewRez are "debt collectors" who violated the FDCPA.   In the event Plaintiff's FDCPA claim is construed broadly to include BONY Mellon, it is not a "debt collector" because it became the owner of the debt on or before September 24, 2004 and the Note was not in default that that time.[85]  As such, all Defendants are excluded from the definition of "debt collector" under the FDCPA and Plaintiff's claim fails as a matter of law.

39.     But even if the Court determined that Defendants were "debt collectors" subject to the FDCPA, summary judgment would still be warranted because Defendants did not misrepresent the amount owed and only declared the Loan delinquent after Plaintiff failed to make full monthly payments as required by the Note, Deed of Trust, and Modification Agreement.

40.     Beginning in March 1, 2017, Plaintiff failed to make payments for taxes and escrow in the amounts required by the monthly mortgage statements.[86]  Month after month, Plaintiff made only partial payments which were insufficient to bring the Loan current.[87]  The amount of the arrears grew consistently until Defendants sent Notice of Default to Plaintiff in January 2018.[88]  Plaintiff defaulted on the Loan and failed to bring it current.   As such, it was proper for Defendants to declare the Loan as delinquent and in default.   Plaintiff's FDCPA claim fails as a matter of law.

---

[84] *See* 15 USC §1692a(6)(F)(iii). *See also Belay v. Countrywide Homeloans, Inc.*, No. A-12-CV-050-LY, 2012 U.S. Dist. LEXIS 192536 *17-18 (W.D. Tex., Jul. 20, 2012), citing Brown v. Moris, 243 Fed.Appx. 31, 36 (5th Cir. 2007). *See also Montgomery v. Wells Fargo Bank, N.A.*, 459 Fed.Appx. 424, 428 n. 1 (5th Cir. 2012) (plaintiff's FDCPA claim failed "because mortgage lenders are not 'debt collectors' within the meaning of the FDCPA."); *Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp.2d 176, 190 (S.D.Tex. 2007) ("Mortgage companies collecting debts are not 'debt collectors.'").
[85] *See* Business Records Affidavit, **Exhibit A,** ¶5; *see also* Loan Payment History, **Exhibit A-9**, Page 34, Transaction Date 08/17/04 showing "Next Due" as 9/04.
[86] *Id.*
[87] *See* Business Records Affidavit, **Exhibit A, ,** ¶13-16.
[88] *See* Business Records Affidavit, **Exhibit A, ,** ¶17, *see also* Notice of Default, **Exhibit A-15**.

16789381.1

41.     Moreover, regarding Plaintiff's allegation that Defendants threatened a foreclosure sale "that was uncalled for," Texas law is well-settled that "[t]he activity of foreclosing on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA."[89] "Foreclosure on a property under a deed of trust is not, as a matter of law, collection of a debt under the FDCPA."[90] Accordingly, summary judgment is proper on Plaintiff's FDCPA claim as it relates to threatening a foreclosure sale.

**D.    Plaintiff's claim for violation of TILA fails because the claim is time-barred and Defendants are not creditors under the TILA.**

42.     Congress enacted the Truth in Lending Act ("*TILA*") to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to [him or her] and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing… practices."[91] TILA has a one-year statute of limitations that begins running on the date of the alleged violation.[92]

43.     Under TILA, a "creditor" is a person who "(1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such

---

[89] *See Henry v. Chase Home Fin., LLC*, No. H-11-0668, 2011 U.S. Dist. LEXIS 139871 at *20 (S.D. Tex., Dec. 6, 2011). *See also McCrae v. PHH Mortg., LLC*, No. A-14-CV-733-LY, 204 U.S.Dist. LEXIS 192115, 2014 WL 12586851 at *6 (W.D.Tex. Sept. 19, 2014) (collecting cases), *report and recommendation adopted sub nom. McCrae v. PHH Mortg., LLC*, No. A-14-CV-733-LY, 2014 U.S. Dist. LEXIS 192112, 2014 WL 12588301 (W.D.Tex. Nov. 4, 2014).

[90] *See Bonds v. Long Beach Mortg., Co.*, No. H-03-5326; H-04-1106, 2005 U.S. Dist. LEXIS 63007 *11-12 (S.D. Tex., Apr. 9, 2005). *See also Sweet v. Wachovia Bank & Trust Co.*, 2004 WL 1238180 *2 (N.D. Tex., Feb. 26, 2004) (holding that the FDCPA does not cover foreclosure as "debt collection").

[91] *See* 15 USC §1601(a).

[92] *See Dixon v. Ocwen Loan Servicing, LLC*, No. 3:16-CV-2094-G, 2016 U.S. Dist. LEXIS 146949 *9 (N.D. Tex, Oct. 24, 2016), citing 15 USC §1640(e).

evidence of indebtedness, by agreement."[93]  Thus, TILA applies only to a person to whom the debt is *initially* payable.[94]

44.    An assignee of a creditor may be liable "only if the violation for which the action or proceeding is brought is apparent on the face of the disclosure statement . . ."[95] A violation is apparent on the face of the disclosure statement if "the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement" or "the disclosure statement does not use the terms or format required to be used by [TILA]."[96]  As other courts have ruled, the term "disclosure statement" is used in TILA "to refer to documents provided before the extension of credit," in other words, "at or before closing."[97]  As such, violations based on events occurring after an extension of credit cannot serve as a basis for assignee liability under TILA.[98]

45.    While a servicer of a loan has the obligation to provide certain information to borrowers under TILA, liability for violations of TILA rests squarely and solely with creditors.[99]

---

[93] *See* 15 USC §1602(g).

[94] *See Banks v. Green Tree Servicing, LLC*, No. 14-cv-2825, 2015 U.S. Dist. LEXIS 27172 *13, 2015 WL 1058124 *5 (N.D. Ill. Mar. 5, 2015), *citing Vincent v. Money Store*, 736 F.3d 88, 91 (2d Cir. 2013) ("Because The Money Store was an assignee of the plaintiffs' notes, and therefore not the person to whom the debts were initially payable, the district court determined that The Money Store did not qualify as a creditor under TILA."). *See also Richards v. NewRez, LLC*, No. ELH-20-1282, 2021 U.S. Dist. LEXIS 51233 *68 (D. Md., Mar. 18, 2021) ("Shellpoint is not 'the person to whom the debt...[was] initially payable . . . so it does not constitute a 'creditor' under TILA."). *See Shilo v. Ditech Fin., LLC*, No. 16-11564, 2017 U.S. Dist. LEXIS 117629 *17-18, 2017 WL 3202725 (D.Mass., Jul. 26, 2017) ("Fannie Mae is not the entity to whom the debt arising from the consumer credit transaction was initially payable and, as such, Fannie Mae does not satisfy the 'creditor' definition as outlined under TILA.").

[95] *See* 15 USC §1641(a).

[96] *See Shilo v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 117629 *17-18.

[97] *See Evanto v. Fed. Nat'l Mortg. Ass'n*, 814 F.3d 1295, 1298 (11th Cir. 2016); *Signori v. Fed. Nat'l Mortg. Ass'n*, 934 F. Supp. 2d 1364, 1368 (S.D. Fla. 2013) (stating that disclosure documents are "documents generated in connection with the origination of the loan").

[98] *See Shilo v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 117629 *19.

[99] *See Jones v. Bank of N.Y.*, No. 12-CV-11503-RWZ, 2013 U.S. Dist. LEXIS 97481, 2013 WL 3728382 *5 (D. Mass. Jul. 12, 2013), *quoting Shaw v. BAC Home Loans Servicing, LP*, Civil Action No. 10-11021-DJC, 2013 U.S. Dist. LEXIS 28863 (D. Mass. 2013). *See Best v. NewRez, LLC*, GJH-19-2331, 2020 U.S. Dist. LEXIS 167005, 2020 WL 5513433, at *31 (D. Md. Sept. 11, 2020) ("Plaintiff's [TILA] claim is asserted only against Shellpoint, his servicer, and therefore cannot proceed" because "TILA only imposes liability on creditors and their assignees."); *Kemp v. Seterus, Inc.*, 348 F. Supp. 3d 443, 447 (D. Md. 2018) ("The TILA claims against [defendant], who is the loan servicer, are clearly dismissible."); *MBongo v. Specialized Loan Servicing, LLC*, PJM-15-2941, 2016 U.S. Dist. LEXIS 82832,

46.     Here, none of the Defendants are subject to liability under TILA.  Neither BONY

Mellon nor the servicer defendants (Ocwen, PHH, and NewRez) is the person to whom the debt

was initially payable.   Accordingly, summary judgment is warranted on this claim.

47.     Here, Plaintiff claims that Defendants violated the TILA by failing to provide

periodic statements "since 2018" under 15 USC §1638(f)(1).[100]  Plaintiff filed this suit on March

2, 2020.[101] The one-year statute of limitations bars Plaintiff's claim to the extent Plaintiff asserts

that Defendants did not send statements before March 2, 2019.[102]  Further, Plaintiff was in fact

provided with all required periodic statements "since 2018."[103]   Because Defendants are not

creditors as that term is defined by the TILA, because Plaintiff's claim is partially time-barred, and

because Plaintiff was in fact provided with all required period statements "since 2018," her claim

for violation of the TILA fails as a matter of law and summary judgment is warranted.

**E.     Plaintiff's claim for violation of the Fair Credit Reporting Act fails because Ocwen, PHH, and NewRez did not receive a credit dispute for the Loan in November or December 2020 and, even if all of Plaintiff's FCRA allegations are taken as true, the reporting was accurate because Plaintiff failed to make complete monthly payments on the Loan beginning March 1, 2017.**

48.     To recover against a furnisher of information to the credit reporting agencies under

section  § 1681s-2(b) of the Fair Credit Reporting Act ("*FCRA*"), a plaintiff must show that: (1)

she disputed the accuracy or completeness of information with a consumer reporting agency; (2)

---

2016 WL 8671841, at *5-6 (D. Md. June 24, 2016) (dismissing TILA claim against servicer because it was neither the loan originator nor an assignee of the loan); *see also Taemy Oh v. Ocwen Loan Servicing, LLC*, 18-cv-07214, 2021 U.S. Dist. LEXIS 7450, 2021 WL 131432, at *4-5 (N.D. Ill. Jan. 14, 2021) (dismissing plaintiff's claim for TILA violation based on failure to provide periodic statements because defendant was not a creditor under TILA).

[100] *See* Second Amended Complaint, ¶¶45-47.

[101] *See* Original Petition, Doc. No. 1-1.

[102] *See Dixon v. Ocwen Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 146949 at *9-10 (TILA claims for failure to transmit periodic statements more than a year before suit filed were time-barred).

[103] *See* Business Records Affidavit, **Exhibit A**; *see also* Monthly Mortgage Statements, June 2016 – March 2020, **Exhibit A-7**.

16789381.1

the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation.[104]

49.     Here, Plaintiff alleged that she notified Experian of her dispute on or about November 21, 2020.[105]  She claims that Experian provided the dispute letter to the furnishers "which responded by sending a report back to Experian."[106]  Finally, Plaintiff alleges that Experian responded to her dispute letter on December 15, 2020 and that the report "continue[d] to allege Plaintiff was 30 and 60 days past due between May and July 2017" and that Ocwen "did not make changes for payments made 2018 or any date thereafter."[107]  Importantly, Plaintiff only alleges that Ocwen and PHH – not NewRez or BONY Mellon - caused damage to her credit by their "negative, inaccurate, and misleading credit reporting."[108]

50.     Plaintiff's FCRA claim fails because PHH (which includes Ocwen by merger) did not receive a credit dispute concerning this Loan in November or December 2020.[109]  Accordingly, Plaintiff cannot prove that "the agency notified the furnisher of the consumer's dispute" as required for a viable FCRA claim.[110]  Summary judgment is therefore warranted on this claim.

51.     Further, even if Experian had notified PHH of a credit dispute by Plaintiff, the FCRA claim still fails because the Loan was in fact delinquent at all times after March 1, 2017 when Plaintiff began making partial payments and refused to make the total monthly payment owed.[111]  Therefore it would have been accurate for PHH to report the Loan as past due between

---

[104] *Egwurube v. Discover Fin. Servs.*, No. 3:20-CV-00292, 2021 U.S. Dist. LEXIS 15133 at 6 (S.D. Tex. 2021).
[105] *See* Second Amended Complaint, ¶51.
[106] *Id.*
[107] *Id.*, at ¶52.
[108] *See* Second Amended Complaint, ¶54.
[109] *See* Business Records Affidavit, **Exhibit A**, ¶18.
[110] *Shaunfield v. Experian Info. Solutions, Inc.*, 991 F.Supp.2d 786, 805 (N.D. Tex. 2013).
[111] *See* Business Records Affidavit, **Exhibit A**, ¶13-17; *see also* Loan Payment History, **Exhibit A-9**.

May and July 2017 as Plaintiff alleges.[112]  As such, neither the second nor the third elements of this claim are satisfied and summary judgment is warranted.

**F.     Plaintiff is not entitled to injunctive relief because none of her claims survive summary judgment.**

52.     Under Texas law, injunctive relief is an equitable remedy, not an independent cause of action.[113]  To obtain such relief, a party must first show "a substantial likelihood of success on the merits" of an underlying claim.[114]  Accordingly, numerous courts, including the federal District Courts in Texas and the Fifth Circuit, have held that when a claim for injunctive relief such as a temporary restraining order is not supported by some other viable cause of action, that it must be dismissed.[115]  Here, because summary judgment is warranted on all of Plaintiff's underlying causes of action, summary judgment is also proper on Plaintiff's request for injunctive relief.

## V.     <u>CONCLUSION</u>

Summary judgment is warranted on all of Plaintiff's claims because the Loan documents specifically allow Defendants to adjust the monthly mortgage payment for collection of escrow.

---

[112] *See* Second Amended Complaint, ¶52.

[113] *See Guerra v. Wells Fargo Bank, N.A.*, No. 5:13-cv-00740-FB, 2014 WL 12586772, *2, 2014 U.S. Dist. LEXIS 191981 (W.D. Tex. Jan. 7, 2014) (citing *Puente v. CitiMortgage, Inc.*, No. 3-11-cv-2509-N, 2012 U.S. Dist. LEXIS 138455,2012 WL 4335997, at *7 (N.D. Tex. Aug. 29, 2012)); *see Johnson v. Wells Fargo Bank, N.A.*, No. 5:16-CV-00564-DAE, 2016 WL 6462291, at *2, 2016 U.S. Dist. LEXIS 150850 (W.D. Tex. Nov. 1, 2016) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

[114] *See Amezcua v. Ocwen Loan Servicing, LLC*, 5:14–CV–1018–DAE, 2015 WL 685264, at *2, 2015 U.S. Dist. LEXIS 18583 (W.D. Tex. Feb. 17, 2015) (quoting *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011)).

[115] *See, e.g., Guerra v. Wells Fargo*, 2014 WL 12586772 at *2;  *Rodriguez v. Bank of Am., N.A.*, No. SA-12-CV-905-DAE, 2013 WL 1773670, at *13, 2013 U.S. Dist. LEXIS 59469 (W.D. Tex. April 25, 2013) (holding that the plaintiff's request for injunctive relief failed because the plaintiff had not pleaded a viable cause of action); *Barcenas v. Fed. Home Loan Mortg. Corp.*, No. H-12-2466, 2013 WL 286250, at *9, 2013 U.S. Dist. LEXIS 9405 (S.D. Tex. Jan. 24, 2013) (holding that the plaintiffs' claim for injunctive relief failed because the plaintiffs did not adequately plead any of their substantive legal claims); *Olaoye v. Wells Fargo Bank, NA*, No. 4:11-CV-772-Y, 2012 WL 1082307, at *5 n.5, 2012 U.S. Dist. LEXIS 45952 (N.D. Tex. Apr. 2, 2012) (holding that the plaintiff was not entitled to injunctive relief because the plaintiff had failed to state a claim upon which relief could be granted); *see also Pajooh v. Harmon*, 82 F. App'x 898, 899 (5th Cir. 2003) (affirming the district court's determination that the plaintiff had failed to state a claim upon which injunctive relief could be granted).

Accordingly, Defendants were contractually permitted to adjust Plaintiff's monthly payment to include escrow for property insurance.  Defendants respectfully request that this Court grant final summary judgment in their favor as to all of Plaintiff's claims and for all relief at law or equity to which Defendants have proven themselves entitled.

Respectfully submitted,

**By:** _/s/  Matthew A. Knox_

**Emily Stroope**
State Bar No. 24070692
estroope@mcglinchey.com
**MCGLINCHEY STAFFORD, PLLC**
6688 North Central Expressway, Suite 400
Dallas, Texas 75206
Phone: 214-445-2445
Facsimile: 214-445-2450

**Matthew A. Knox**
State Bar No. 24071102
mknox@mcglinchey.com
**MCGLINCHEY STAFFORD, PLLC**
1001 McKinney, Suite 1500
Houston, TX  77002
Telephone:     (713) 520-1900
Facsimile:      (713) 520-1025

*Attorneys for Defendants*

16789381.1

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2021, I served the foregoing Defendants' Motion for Summary Judgment on all counsel of record by *Email* as follows:

***Via ECF and Email***
Rachel Sechelski
Attorney-in-Charge
State Bar No: 24096053
rsechelski@lonestarlegal.org
Amir Befroui
abefroui@lonestarlegal.org
500 Jefferson, 17th Floor
Houston, TX 77002

Rich Tomlinson
Lone Star Legal Aid
1415 Fannin Street
Houston, Texas 77002
713-805-0420
713-652-0077, ext. 1154
RTomlinson@lonestarlegal.org

***Attorneys for Plaintiff***

_/s/ Matthew A. Knox_
Matthew A. Knox

16789381.1